# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

WORLD PROPERTIES, INC. and     :
ROGERS CORPORATION,     :
    :
       Plaintiffs,     :
    :
v.     :     NO. 3:08CV1827 (MRK)
    :
ARLON, INC.     :
    :
       Defendant.     :

## MEMORANDUM OF DECISION

Plaintiffs World Properties and Rogers Corporations (collectively, "Rogers") sued Defendant Arlon, Inc. ("Arlon") alleging that Arlon infringed Rogers's patent for a substrate material used in the manufacture of circuit boards. *See* Compl. [doc. # 1]. Rogers later moved to amend its complaint to add another claim of infringement regarding a different product and patent, as well as a breach of contract claim stemming from that infringement. *See* Pls.' Mot. to Amend Compl. [doc. # 33]. The Court granted Rogers's motion.[1] *See* Order [doc. # 72]. Pending before the Court are Arlon's Motion for Summary Judgment [doc. # 38] and Arlon's Supplemental Motion for Summary Judgment as to the Amended Complaint [doc. # 75]. The crux of Arlon's motions is that a covenant

---

[1] The Court heard oral argument on Rogers's Motion to Amend the Complaint [doc. # 33], along with Arlon's Motion for Summary Judgment [doc. # 38], on September 18, 2009. Because the issues in the motion to amend were so intertwined with the summary judgment motion, the parties agreed that the Court should grant Rogers's motion to amend and decide the motion for summary judgment as to both infringement claims. The Court granted Rogers's motion, directed Rogers to file its amended complaint, and directed Arlon to submit a supplemental motion for summary judgment addressing Rogers's amended complaint and incorporating its prior briefs by reference. *See* Order [doc. # 72]. Both parties complied. *See* Amended Compl. [doc. # 74]; Def.'s Supp. Mot. for Summ. J. as to the Amended Compl. [doc. # 75].

1

not to sue in an asset purchase agreement (APA) between the parties applies to the products and patents in this case, and therefore prevents Rogers from suing Arlon for patent infringement. The Court heard oral argument on the pending motions on September 18, 2009, and for the reasons that follow, the Court GRANTS Arlon's Supplemental Motion for Summary Judgment as to the Amended Complaint [doc. # 75] and DENIES as moot Arlon's Motion for Summary Judgment [doc. # 38].

## I.

Rogers and Arlon are manufacturers of circuit board laminate materials for high frequency applications and are in direct competition with each other. For the purpose of deciding the pending motions the Court assumes that Arlon's products infringe Rogers's patents (though Arlon denies any such infringement), and therefore it is not necessary to delve into the details of this technology. It suffices to say that the parties are both involved in the manufacture of the part of the circuit board (the dielectric layer) on which the actual circuitry (the conducting material) rests. The properties of the dielectric layer help determine the properties of the circuit board.

The patents at issue in this case are Patent Nos. 5,552,210 (the"'210 patent") and 5,389,181 (the "'181 patent"), each of which were assigned to World Properties and exclusively licensed by Rogers. The application for the '210 patent was filed on November 7, 1994, and the patent was issued on September 3, 1996 and is still valid. The application for the '181 patent was filed on October 5, 1993, the patent was issued on January 24, 1995, and its term expired in 2008. Rogers alleges that Arlon's TC-600 product infringes the '210 patent and that Arlon's AD-1000 product infringes the '181 patent. *See* Pls.' Mem. of Law in Supp. of Opp. to Def.'s Mot. for Summ. J. [doc. # 63] ("Rogers's Resp.") at 1-2.

On January 30, 1996, the parties entered into the APA.  Prior to their agreement, Arlon had been sued by Rogers for patent infringement on at least two previous occasions, including one incident where Arlon developed a product that allegedly infringed a subsequently-issued patent of which Arlon was unaware.  *See* Def.'s Mem. in Supp. of Mot. for Summ. J. [doc. # 39] ("Arlon's Mem.") at 2-3; Pls.' Sur-Reply to Def.'s Reply Br. in Supp. of Mot. for Summ. J. [doc. # 68-2] ("Rogers's Sur-Reply") at 3.  Under the terms of the contract, Arlon sold certain competing product lines to Rogers, agreed to pay royalties on certain other product lines for five years, and agreed not to manufacture or sell certain products for three years.  In return, Rogers agreed not to assert certain patent rights for two categories of products, known as "Royalty Products" and "Reinforced Products."  Decl. of William J. Cass, Esq. in Opp'n to Def.'s Mot. for Summ. J. [doc. # 54] ("Cass Decl.") Ex. 1 § 3.4 (Exhibit 1 of the Cass Declaration is the APA itself, which will be cited simply as "APA.").

The precise language of the APA is critical to resolution of this dispute, and therefore it is appropriate to quote it at some length.  The provision of the APA around which the parties' disagreement revolves is § 3.4, the covenant not to sue, which reads as follows:

> Purchaser's Patent Rights. [Rogers] hereby agrees that, provided [Arlon] is in compliance with the terms and conditions of this Agreement, [Rogers] will not assert against [Arlon], (a) with respect to the Royalty Products or any Reinforced Products, any of [Rogers's] rights under [Rogers's] pending patent applications which are issued on or prior to the third anniversary of the Closing Date [February 29, 1996] (the "Third Anniversary"), or which claim the benefit of a filing date prior to the Third Anniversary, or (b) with respect to the Royalty Products, any of [Rogers's] rights under patents currently issued to [Rogers], or (c) with respect to the Reinforced Products, any of [Rogers's] rights under patents currently issued to [Rogers], other than U.S. Patent Nos. 4,844,284 and 5,389,181. [Rogers] further agrees that it will not assert any rights under patents issued to [Rogers] after the Third Anniversary against any Reinforced Product which was introduced to the market by [Arlon] during the period ending with the Third Anniversary.

APA § 3.4.  The APA defines "Royalty Products" and "Reinforced Products" as follows:

> [Arlon] has agreed to pay certain royalties to [Rogers] on sales of *any woven glass fabric reinforced fluoropolymer-based product filled with particulate ceramic filler, where the resulting combination has a dielectric constant of 10 (± 0.5) or 6 (± 0.5), including but not limited to [Arlon's] AR-1000 and [Arlon's] AR-600 product lines (and any product which may reasonably be considered a substantially identical successor product to such product lines) ("Royalty Products")*, and [Rogers] has agreed that it will not assert infringement of certain of [Rogers's] patent rights relating to such products, or to *any woven glass fabric reinforced or self-supporting non-woven web reinforced fluoropolymer-based products filled with particulate ceramic filler, where the resulting combination has a dielectric constant of about 5-12 (the "Reinforced Products")*, upon the terms and conditions herein set forth.

APA at Recital D (emphasis added).  Finally, the APA includes a provision in the royalty portion of the contract that requires Arlon to provide Rogers notice before introducing a new Royalty Product:

> [Arlon] shall provide to [Rogers] not less than 30 days advance written notice of the planned introduction by [Arlon] of new Royalty Products, which notice shall provide such product descriptions as will enable [Rogers] to determine that such products would have the characteristics to constitute such products as Royalty Products.

APA § 3.2(b).

Thus, the APA distinguishes between two types of products (Royalty Products and Reinforced Products) and three types of patents – (1) those that were already issued as of February 29, 1996 ("Current Patents"), (2) those that were pending as of February 29, 1996 and were issued within three years of that date ("Pending Patents"), and (3) those that issued after February 28, 1999 ("Future Patents").  The parties agree that the '210 patent is a Pending Patent and the '181 patent is a Current Patent.  Finally, the category of Royalty Products is a subset of the category of Reinforced Products.  *See* Arlon's Mem. [doc. # 39] at 9-10.  In other words, all Royalty Products are also Reinforced Products by definition.  Those products that fall within the category of Reinforced

Products but not within the sub-category of Royalty Products are often referred to by the parties as "Non-Royalty Reinforced Products."  The parties agree that the TC-600 and the AD-1000 meet the technical definition for Royalty and Reinforced Products although, as discussed below, Rogers contends that they are not actually Royalty Products because they are not "substantially identical" to the AR-1000 or AR-600 product lines.  *See* Rogers's Resp. [doc. # 63] at 1.

## II.

The standard for summary judgment is a familiar one.  Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ*., 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted).  "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).

The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), and the Court must resolve all ambiguities and draw all inferences in favor of the nonmoving party, *see Anderson*, 477 U.S. at 255; *Holcomb v. Iona Coll*., 521 F.3d 130, 137 (2d Cir. 2008).  If the moving party carries its burden, the party opposing summary judgment "may not rely merely on allegations or denials." Fed. R. Civ. P. 56(e)(2).  Rather, the opposing party must "set out specific facts showing a genuine issue for trial."

5

*Id*.  In short, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## III.

Rogers alleges that Arlon's TC-600 and AD-1000 infringe the '210 and '181 patents, respectively.  In its pending motions for summary judgment, Arlon argues that the covenant not to sue bars all of Rogers's patent infringement claims.  *See* Arlon's Mem. [doc. # 39] at 1.  Specifically, Arlon asserts that, under the APA, the TC-600 is both a Royalty Product and a Reinforced Product, the '210 patent is a Pending Patent, and the covenant not to sue therefore controls.  *See id*. at 3. Arlon also claims that the AD-1000 is a Royalty Product, and that while there is an exception to the covenant not to sue for the '181 patent as applied to Reinforced Products, that exception does not apply to Royalty Products.  *See id*. at 11-13.

Rogers makes several arguments in response to Arlon's motions.  First, Rogers argues that the TC-600 and the AD-1000 are not Royalty Products because they are not substantially identical to the AR-600 and the AR-1000.  *See* Rogers's Resp. [doc. # 63] at 1-2, 17-18.  Second, Rogers contends that the last sentence of the covenant not to sue means that the covenant only applies to products introduced by Arlon up to three years after February 29, 1996.  *See id*. at 4, 19.  Third, Rogers claims that Arlon's course of performance suggests that it understood that the covenant not to sue did not apply to the TC-600 or the AD-1000.  *See id*. at 15-20.  Fourth, Rogers argues that the '181 patent is entirely excepted from the covenant not to sue.  *See id*. at 23.  Finally, Rogers contends that Arlon breached the APA by infringing the '181 patent and by failing to provide 30 days notice

of the introduction of the TC-600 and the AR-1000, and that because these breaches were material, the covenant not to sue is no longer in force.  *See id*. at 20-24.

Each of these arguments requires the Court to interpret the APA.  The parties agree that Connecticut law governs the interpretation of the APA.  *See* APA § 9.7. In Connecticut, the interpretation of a contract begins with the language of the contract, and if that language is clear and unambiguous, "the contract must be given effect according to its terms, and the determination of the parties' intent is a question of law." *Isham v. Isham*, 292 Conn. 170, 181 (2009); *see also O'Connor v. City of Waterbury*, 286 Conn. 732, 744 (2008).  Furthermore, a court may not consider extrinsic evidence where the contract language is unambiguous, though a court may consider extrinsic evidence to resolve any ambiguity in the instrument.  *Isham*, 292 Conn. at 180-81.  Whether the language of a contract is ambiguous is also a question of law for the Court.  *Id*. at 181.

> Contract language is unambiguous when it has a definite and precise meaning concerning which there is no reasonable basis for a difference of opinion. . . .  The proper inquiry focuses on whether the agreement on its face is reasonably susceptible of more than one interpretation. . . . [T]he mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . .  A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . .  Finally, in construing contracts, we give effect to all the language included therein, as the law of contract interpretation militates against interpreting a contract in a way that renders a provision superfluous.

*Id*. at 181-82 (internal quotation marks, citations, and ellipses omitted).

## IV.

Applying these principles of Connecticut law to the APA, the Court begins with Rogers's argument that the TC-600 and the AD-1000 are not Royalty Products because they are not substantially identical successor products to the AR-1000 or the AR-600.  For the purpose of this

discussion the Court assumes (though without deciding) that Rogers is correct that the TC-600 and AD-1000 are not substantially identical successor products. Rogers argues that, according to the terms of the APA, a product is only a Royalty Product if it is "substantially identical" to the AR-1000 and AR-600 product lines, and therefore the TC-600 and AD-1000 are not Royalty Products. *See* Rogers's Resp. [doc. # 63] at 1-2.

The Court rejects Rogers's argument based on the unambiguous language of the contract. The APA defines Royalty Products as "any woven glass fabric reinforced fluoropolymer-based product filled with particulate ceramic filler, where the resulting combination has a dielectric constant of 10 ($\pm$ 0.5) or 6 ($\pm$ 0.5), *including but not limited to* [Arlon's] AR-1000 and [Arlon's] AR-600 product lines (and any product which may reasonably be considered a substantially identical successor product to such product lines)."  APA § 3.4 (emphasis added).  Rogers agrees that both the TC-600 and AD-1000 are "woven glass fabric reinforced fluoropolymer-based product[s] filled with particulate ceramic filler, where the resulting combination has a dielectric constant of 10 ($\pm$ 0.5) or 6 ($\pm$ 0.5)," but reads "including but not limited to" as a term of limitation that limits the definition of Royalty Products to products that are substantially identical to the AR-1000 and AR-600 product lines.  Such a reading turns the phrase "including but not limited to" on its head.  That phrase is unambiguously exemplary, rather than exclusionary. *See, e.g.*, *United States v. D'Amelio*, No. 07 CR 548 (CM), 2009 WL 1688470, at *10 (S.D.N.Y. June 1, 2009) (using "including but not limited to" as an example of a phrase that is not one of limitation); *see also Cooper Distrib. Co., Inc. v. Amana Refrigeration, Inc.*, 63 F.3d 262, 280 (3d Cir. 1995) ("By using the phrase 'including, but not limited to,' the parties unambiguously stated that the list was not exhaustive.").  Thus, in order to adopt Rogers's argument, the Court would have to read these words out of the contract, rendering

8

them superfluous and disregarding an important canon of contract interpretation, which requires the Court to give meaning to all of the words of a contract. *See Isham*, 292 Conn. at 182 ("[I]n construing contracts, we give effect to all the language included therein, as the law of contract interpretation militates against interpreting a contract in a way that renders a provision superfluous.") (internal quotation marks and ellipses omitted).

In response, Rogers points to a letter sent by Arlon's counsel during negotiations of the APA as evidence that Arlon understood Royalty Products to be limited to the AR-600, the AR-1000, and substantially identical successor products. *See* Cass Decl. [doc. # 54] Ex. 2 ("My client has understood that royalty payments would apply to AR-600, AR-1000 and substantially identical successor products, while protection against patent exposure was supposed to extend more generally to reinforced products in the 5-12 DK range that Arlon introduces in the next three years."). While this letter might be somewhat helpful to Rogers, because the Court finds that the contract is unambiguous, the Court will not consider extrinsic evidence. *See Isham*, 292 Conn. at 180 ("When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract.") (internal quotation marks omitted). Even were the Court to take the letter into account, it would not outweigh the clear language of the contract. Therefore, the Court concludes that the TC-600 and AD-1000 are both Royalty Products under the APA.

The Court notes in passing that it does not particularly matter whether the TC-600 product is a Royalty Product, as there is no dispute that it is at least a Reinforced Product. The parties also agree that the '210 patent is a Pending Patent, as defined in the APA because it was pending on the Closing Date (February 29, 1996) but was issued within three years of that date. Under § 3.4(a) of the APA, Rogers agreed not to sue for infringement of a Pending Patent by any Royalty *or*

Reinforced Product, without exception.[2]  The language of the APA is unambiguous on this point.

Nonetheless, Rogers maintains that the '210 patent is not covered by the covenant not to sue because the last sentence of the covenant not to sue means that the covenant applies only to Reinforced Products introduced by Arlon up to three years after the Closing Date.  *See* Rogers's Resp. [doc. # 63] at 4.  This assertion does not stand up to a cursory reading of the sentence, which states: "[Rogers] further agrees that it will not assert any rights under patents issued to [Rogers] *after* the Third Anniversary against any Reinforced Product which was introduced to the market by [Arlon] during the period ending with the Third Anniversary."  APA § 3.4 (emphasis added).  The language on which Rogers relies applies only to Future Patents (that is,  those issued to Rogers after February 28, 1999).  Here, however, the parties agree that the '210 patent is a Pending Patent and the '181 patent is a Current Patent.  Therefore, the last sentence of the covenant not to sue has absolutely no impact on this case.

Rogers also argues that Arlon's past conduct indicates that it understood that the covenant not to sue would not bar a claim for infringement of the '210 patent.  *See* Rogers's Resp. [doc. # 63] at 18-19.  Specifically, Rogers points to a memo written by a scientist at Arlon suggesting that the AD-1000 might infringe some of Rogers's patents, including the '210 patent.  *See* Decl. of William J. Cass, Esq. in Supp. of Pl.'s Mot. to Amend Compl. [doc. # 35] Ex. D (the "Guiles Memo") at 6. According to Rogers, the Guiles Memo indicates that Arlon knew that the covenant did not protect it against infringement of the '210 patent, and that this "course of performance" evidence is strong evidence of the parties' intent.  *See* Rogers's Resp. [doc. # 63] at 18-19.

---

[2] Because the '181 patent is a Current Patent under the APA, this logic does not apply to Rogers's claim that the AD-1000 infringes the '181 patent.

Even assuming that the Guiles Memo has the significance that Rogers suggests – and the Court is skeptical of this claim – there are two problems with Rogers's argument.  First, the Guiles Memo is not course of performance evidence.  It is an internal Arlon document written by an individual who is not an expert in patent law or the APA.  It does not purport to interpret or implement the ABA in any way, nor is it an interaction or communication between the parties pursuant to the APA.  *See Putnam Park Assoc. v. Fahnestock & Co., Inc.*, 73 Conn. App. 1, 10 (2002) (finding a course of performance based on years of interaction between the parties); *see also* 2 Restatement (Second) Contracts § 202(4) (1981) ("Where an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement.").

Second, as previously explained, the language of the APA is unambiguous.  Therefore, even if the Guiles Memo were considered, it is extrinsic evidence that is only to be used in interpreting a contract where the language to be interpreted is ambiguous.  *See Tinty v. Profita*, No. SPN-9012-15231-PE, 1992 WL 119199, at *2 (Conn. Super. Mar. 18, 1992) ("A course of conduct . . . indicate[s] the intent of the parties for the purpose of interpreting *ambiguous* language in a contract.") (citing *Bead Chain Mfg. Co. v. Saxton Prods., Inc.*, 183 Conn. 266, 274-75 (1981)) (emphasis added); *see also* 11 Williston on Contracts § 32:14 (4th ed.) ("[T]he parties' conduct, no matter how probative in the abstract, will not be considered by many and perhaps most courts unless the contract is ambiguous.").

In sum, because the '210 patent is a Pending Patent under the APA, the covenant not to sue unquestionably bars a claim of infringement.  *See* APA § 3.4(a).  This is true whether the TC-600

is considered to be a Reinforced Product or a Royalty Product.  Furthermore, Rogers's arguments about the last sentence of the covenant not to sue and course of performance are unavailing. Therefore, Rogers agreed not to sue Arlon even if the TC-600 infringed the '210 patent.

## V.

The Court next turns to Rogers's claim that the AD-1000 infringes the '181 patent.  The Court's analysis of the covenant not to sue as applied to the '210 patent is equally applicable to Rogers's claim for infringement of the '181 patent.  Therefore, contrary to Rogers's claim, the Court concludes that the AD-1000 is a Royalty Product.  Nevertheless, Rogers argues that the '181 patent is specifically excluded from at least part of the covenant not to sue.  Arlon argues that this exception applies only to § 3.4(c) of the covenant (i.e. Non-Royalty Reinforced Products), and that because the AD-1000 is a Royalty Product, the '181 patent is not excepted from the covenant.  *See* Def.'s Mem. in Opp. to Pls.' Mot. to Amend Compl. [doc. # 44] ("Arlon's Mot. to Amend Resp.") at 17-18.  On the other hand, Rogers contends that because the exclusion clause is separated by a comma from the rest of the sentence, it applies to the entire sentence (including sub-parts (a) and (b)).  *See* Pls.' Mem. of Law in Supp. of Mot. to Amend Compl. [doc. # 34] ("Rogers's Mot. to Amend Mem.") at 5.

Arlon does not dispute that the '181 patent is excepted from the covenant not to sue for Non-Royalty Reinforced Products.  At oral argument, Rogers seemed to concede their argument that the exclusion clause applies to sub-parts (a) and (b) of the covenant, and instead urged that the AD-1000 fell into sub-part (c) because it is not a substantially identical successor product to the AR-600 and the AR-1000, and thus not a Royalty Product.  Of course, the Court has already rejected this argument and concluded that the AD-1000 is in fact a Royalty Product.

Nevertheless, the Court will address Rogers's argument about the applicability of the

exclusion clause to sub-parts (a) and (b) despite its concession on this point.  The Court agrees with Arlon, and concludes that the '181 patent is only excluded from the covenant not to sue for Non-Royalty Reinforced Products.  Section 3.4 of the APA has three sub-parts.  Sub-part (a) applies to both Royalty and Reinforced Products, and Pending Patents; sub-part (b) applies to Royalty Products and Current Patents; and sub-part (c) applies to Reinforced products and Current Patents.  The exception language is located in sub-part (c), and this placement indicates that it applies only to Non-Royalty Reinforced Products.  In other words, because each sub-part is separated by commas and the word "or," the most natural reading of the exception clause is that it modifies only sub-part (c), and not sub-part (a) or (b).  It is true that a general rule of statutory construction is that "[w]hen a modifier is set off from a series of antecedents by a comma, the modifier should be read to apply to each of those antecedents." *Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*, 186 F.3d 210, 215 (2d Cir. 1999).  However, this doctrine is not an absolute rule.  *Id*. at 216.  The fact that each antecedent is its own sub-part, and that each antecedent is separated by the word "or" in addition to a comma, makes it clear that the last clause of sub-part (c) attaches only to that sub-part.

This analysis of the APA's punctuation is reinforced by the nonsensical results that would occur if the exception clause were applied to each sub-part.  The Court is "mindful of the Supreme Court's admonition that 'a purported plain-meaning analysis based only on punctuation is necessarily incomplete and runs the risk of distorting a statute's true meaning.'"  *Id*. (quoting *United States Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 454 (1993)).  Although the Supreme Court was discussing statutory interpretation in the passage quoted above, the same logic would apply to contract interpretation.  Because Royalty Products are also Reinforced Products by definition, if the intent was to apply the exception for the '181 patent to all Reinforced Products it

would not have been necessary to distinguish between sub-parts (b) and (c).  In other words, only a sub-part dealing with Reinforced Products (or dealing simultaneously with Reinforced Products and Royalty Products), and excepting the '181 patent, would have been needed.  Therefore, to read the exception clause as applying to both sub-parts (b) and (c) would render meaningless the separation of these provisions into two sub-parts.

In addition, it makes no sense to read the exception as applying to sub-part (a).  As conceded by Rogers at oral argument, the two excluded patents were already issued at the Closing Date, and thus are Current Patents as defined by the APA, while sub-part (a) applies only to Pending Patents.  And there is no grammatical or logical basis for reading the exception clause as applying to sub-parts (b) and (c) but *not* sub-part (a).  When interpreting a contract, the Court needs to consider the language taken as a whole.  *See National Grange Mutual Ins. Co. v. Santaniello*, 290 Conn. 81, 89 (2009) ("When interpreting [a contract], we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result.") (internal quotation marks omitted).  In this case, when considering the APA as a whole, the only logically consistent result is to read the exception language as applying to sub-part (c), and not to the entirety of § 3.4.

Arlon also points to an earlier draft of the APA as evidence that Rogers wanted the exception language to apply to all Royalty and Reinforced Products, but lost this point during negotiations of the APA.  *See* Arlon's Mot. to Amend Resp. [doc. # 44] at 18.  Again, this is extrinsic evidence that can be considered only if the language of the contract is ambiguous, which it is not in this case.  Nonetheless, were the Court to consider the earlier drafts of the APA, they would appear to indicate that the parties negotiated this point and rejected a blanket exception for the '181 patent.  *See* Decl.

14

of Brian E. Moran, Esq. in Supp. of Def.'s Mot. for Summ. J. [doc. # 41] Exs. 7-9 (earlier drafts of the APA).

In sum, the Court concludes that the covenant not to sue bars Rogers's claim that the AD-1000 infringes the '181 patent.

## VI.

Rogers's final argument is that Arlon breached the APA in two different ways, and that these breaches excuse Rogers from future performance of the contract, including the covenant not to sue. *See* Rogers's Resp. [doc. # 63] at 23; Rogers's Sur-Reply [doc. # 68-2] at 1-5. First, Rogers alleges that Arlon breached the APA by infringing the '181 patent. Second, Rogers claims that Arlon breached § 3.2(b) of the APA by failing to give 30 days notice of the introduction of the TC-600 and AD-1000. *See* Rogers's Resp. [doc. # 63] at 24; Rogers's Sur-Reply [doc. # 68-2] at 1-5; APA § 3.2(b) ("[Arlon] shall provide to [Rogers] not less than 30 days advance written notice of the planned introduction by [Arlon] of new Royalty Products.").

"A party is not automatically excused from the future performance of contract obligations every time the other party commits a breach; if a breach is relatively minor and not of the essence, the plaintiff is still bound by the contract and may not abandon performance and obtain damages for a total breach by the defendant, though the nonbreaching party is entitled to damages caused even by the immaterial breach, albeit that these may be nominal in amount." 23 Williston on Contracts § 63:3 (4th ed.); *see also 669 Atlantic Street Assoc. v. Atlantic-Rockland Stamford Assoc.*, 43 Conn. App. 113, 125-28 (1996) (finding that plaintiff's alleged breach was immaterial, and thus did not excuse defendant from further performance of the contract); *Collins v. Sears, Roebuck & Co.*, 164 Conn. 369, 382-83 (1973) ("Before a default of one party will give the other the right of rescission,

the failure to perform an essential or substantial term or condition of the lease must be in regard to matters which go to the essence or root of the lease or which would render the performance of the remainder a thing different in substance from that which was contracted for, defeating the object of the parties in making the agreement.").

The Connecticut Supreme Court has adopted the Restatement's multi-factor test to determine whether a breach was material:

> In determining whether a failure to render or to offer performance is material, the following circumstances are significant: (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

2 Restatement (Second) of Contracts § 241 (1981); *see also Bernstein v. Nemeyer*, 213 Conn. 665, 672 (1990); *669 Atlantic Street Assoc.,* 43 Conn. App. at 125-26.

Rogers's first contention – that Arlon breached the contract by infringing the '181 patent – is easily addressed.  Rogers invokes the language of § 3.4 of the APA ("provided [Arlon] is in compliance with the terms and conditions of this Agreement") to argue that the validity of the covenant not to sue "depends entirely upon Arlon's continued compliance with its obligations under the APA."  Rogers's Resp. [doc. # 63] at 23.  The Court has already concluded that the covenant not to sue applies to Rogers's claim that the AD-1000 infringes the '181 patent.  Therefore, the Court rejects Rogers's argument that Arlon breached the APA, and need not reach the question of whether such a breach would excuse Rogers from future performance of the contract.  Even had the Court

16

reached the opposite conclusion, it is doubtful that infringement of the '181 patent would amount to a breach of the APA.  Rogers's argument seems to be that any wrongful conduct by Arlon would amount to a breach of the APA that would allow Rogers to cease its own performance.  But in entering into the APA, Arlon did not agree to refrain from infringing Rogers's patents any more than it agreed to refrain from, for example, damaging Rogers's property.  It cannot seriously be contended that Rogers would be excused from the APA if Arlon damaged its property, because such conduct, however wrongful or unlawful, would have nothing to do with Arlon's performance of its obligations under the APA.  Instead, Rogers's remedy would be damages.  It would be a different matter entirely if, for example, Arlon failed to pay royalties as required by the APA.  In such a case, Arlon would not be in compliance with the APA, and Rogers might be excused from its obligations under the covenant not to sue.  But Arlon's infringement of one of Rogers's patents, although unlawful if it were true, would not amount to a breach of the APA.  Rogers's remedy would be a patent infringement suit, not a rescission of the contract.

Rogers's second claim – that Arlon breached the 30-day notice provision – is somewhat less straightforward.  Arlon concedes that it did not provide 30 days notice before it introduced the TC-600 or the AD-1000.  But it argues that the purpose of the notice provision was to notify Rogers of the introduction of products for which Arlon would owe royalties.  *See* Def.'s Reply Br. in Supp. of Mot. for Summ. J. [doc. # 66] ("Arlon's Reply") at 10-11.  Because the parties agree that the obligation to pay royalties ended in 2000 and that the TC-600 and AD-1000 were introduced years later, Arlon argues that the notice provision does not apply.  *Id*.  Rogers counters that the notice provision did not expire with the obligation to pay royalties, and that the purpose of the provision was not limited to informing Rogers of the introduction of products for which they would receive

royalties.  *See* Rogers's Sur-Reply [doc. # 68-2] at 2.  Specifically, Rogers claims that the provision required Arlon to provide a detailed technical description of each new Royalty Product, which was beneficial to Rogers because it could then evaluate such products for potential patent infringement. *Id*. at 2-4.

The Court assumes for the purposes of this discussion that Arlon's failure to provide notice was a breach of the contract.  Therefore, the question is whether the breach was material.  "[F]or a breach of contract to be material, it must go to the root or essence of the agreement between the parties, or be one which touches the fundamental purpose of the contract and defeats the object of the parties in entering into the contract."  23 Williston on Contracts § 63:3 (4th ed.) (internal quotation marks and citations omitted).  Ordinarily, materiality is a question of fact.  *See Bernstein*, 213 Conn. at 670; *Strouth v. Pools By Murphy & Sons, Inc.*, 79 Conn. App. 55, 59 (2003).  However, where the breach is admitted and there is essentially no dispute about the behavior of the parties, the issue of materiality becomes a question of contract interpretation, which is a question of law.  *See Gilbert v. Dep't of Justice*, 334 F.3d 1065, 1071-72 (Fed. Cir. 2003) ("Where, as here, the facts are undisputed, the determination of whether there has been material non-compliance with the terms of a contract, and hence breach, necessarily reduces to a question of law."); *see also Frank Felix Assoc., Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997) (applying New York law); *A.S. v. Trumbull Bd. of Educ.*, 414 F. Supp. 2d 152, 186-87 (D. Conn. 2006) (applying Connecticut law and deciding materiality as a matter of law where there were no facts in dispute).  Of course, just because the parties advance different meanings of the APA does not change the task of contract interpretation into a question of fact.  *See National Grange*, 290 Conn. at 89.

In the case at hand, there is no dispute as to the conduct of the parties.  The disagreement is

limited to the four corners of the APA – specifically, the meaning and scope of the notice provision – and is therefore a question of contract interpretation that the Court can resolve as a matter of law. An examination of the *Bernstein* factors compels the conclusion that the notice provision is not material, and thus any breach of that provision would not excuse Rogers from the covenant not to sue.

First, it is implausible that Rogers has been deprived of the benefit of the APA by any breach of the notice provision.  The provision is subsection (b) of § 3.2 of the APA, entitled "Royalty Reports: Advance Notice."  The overall title of § 3 is "ROYALTIES: NON-ASSERTION OF PAYMENTS."  The language of the provision refers to the planned introduction of new Royalty Products, and requires Arlon to provide enough information to allow Rogers to verify that the product is in fact a Royalty Product.  In short, the provision itself – both its wording and its location within the APA – indicate that it was relevant only to the payment of royalties, an obligation that ended in 2000.  Furthermore, nothing in the provision suggests that Arlon would be required to provide the depth of information that Rogers suggests in its Sur-Reply.  Based on a plain reading of the APA, a simple assertion by Arlon that the product met the technical description of a Royalty Product would be sufficient to satisfy the notice provision.[3]

The second *Bernstein* factor also suggests that any breach of the provision was not material. To the extent that Rogers was deprived of a benefit – and as discussed above, it is not at all clear that Rogers was deprived of anything – it can be adequately compensated by bringing a claim for damages caused by the breach.  There is also no plausible argument that Arlon's behavior fell short

---

[3] At oral argument, the parties agreed that Arlon had never actually provided notice under the notice provision because, prior to the introduction of the TC-600 and the AD-1000, Arlon had not introduced a new Royalty Product into the market since the adoption of the APA.

of the standards of good faith and fair dealing, as its understanding that notice was not required prior to the introduction of the TC-600 and the AD-1000 was, at the very least, reasonable.  In fact, the only *Bernstein* factor that favors Rogers is the likelihood of cure – Arlon clearly cannot cure its failure to provide notice, as the relevant products have been on the market for years.  But this does not outweigh the fact that Rogers was not deprived of a fundamental benefit of the APA.

Applying the standard of materiality "in the light of the facts of each case in such a way as to further the purpose of securing for each party his expectation of an exchange of performances," the Court concludes that any breach of the notice provision was not material.  2 Restatement (Second) of Contracts § 241 cmt. a (1981).  The essence of the APA – the benefit that Rogers bargained for – was the payment of royalties by Arlon, Rogers's purchase of competing product lines, and Arlon's promise not to manufacture or sell certain products for three years.  Rogers realized all of these benefits.  The notice provision might also have been important to Rogers, but a breach of that provision does not defeat the object of the parties in entering into the contract.  Therefore, such a breach does not excuse Rogers from abiding by its covenant not to sue Arlon.

## IX.

For the reasons stated above, the Court GRANTS Arlon's Supplemental Motion for Summary Judgment as to the Amended Complaint [doc. # 75] and DENIES as moot Arlon's Motion for Summary Judgment [doc. # 38].  The parties are directed to submit a schedule for the resolution of all remaining issues no later than October 16, 2009.

IT IS SO ORDERED.


/s/ _____Mark R. Kravitz_____
United States District Judge


**Dated at New Haven, Connecticut: October 8, 2009.**